IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 03-cv-02256-PAB-KLM

DONNA M. AUGUSTE,

      Plaintiff,

v.

JAMES SULLIVAN, individually,
THOMAS WILSON, individually, and
BENJAMIN FIELD, individually,

      Defendants.

_____

**ORDER ON SUMMARY JUDGMENT MOTIONS**
_____

     This matter comes before the Court on motions for summary judgment filed by

plaintiff Donna M. Auguste [Docket Nos. 181, 182], defendant James Sullivan [Docket

No. 183], and defendant Thomas Wilson [Docket Nos. 177, 178].

**I. BACKGROUND**

**A.  Facts**

     The parties do not dispute the following facts.  On August 7, 1998, plaintiff's

nephew, Damon Auguste, was convicted by jury verdict in the Superior Court for Santa

Clara County, California of sodomy in concert, rape in concert, and oral copulation in

concert.  Suppl. to Stipulations[1] ("Stipulations") [Docket No. 205] at 1; Pl.'s Br. in Opp.

_____

[1]  On October 7, 2008, the remaining parties to this action filed a Supplement to
Stipulations, adding stipulations to those included in the Final Pretrial Order [Docket No. 192].
Because these stipulations are binding on the parties for all purposes, this analysis of the
pending summary judgment motions incorporates the undisputed facts as set forth in the
Stipulations and the Final Pretrial Order as appropriate.  *See United States v. Hougham*, 364

to Def. Thomas Wilson's Mot. for Summ. J. ("Pl.'s Opp. to Wilson's MSJ") [Docket No. 193], Ex. 3 (jury verdict). Following an unsuccessful appeal, Damon Auguste filed a petition for writ of habeas corpus in the Santa Clara County California Superior Court. Stipulations at 2. On December 22, 2002, Judge James Emerson of the Santa Clara County California Superior Court issued an order setting an evidentiary hearing on Mr. Auguste's habeas petition. *Id.* Defendant Field, a Deputy District Attorney for Santa Clara County who had prosecuted Mr. Auguste in 1998, was assigned to represent the State of California in that habeas proceeding. *Id.*; Pl.'s Opp. to Wilson's MSJ, Ex. 6 ("Field Decl.") at 1.

Because the habeas petition alleged the existence of newly discovered evidence, defendant Field requested the assistance of the investigation unit of the Santa Clara County District Attorney's Office. Field Decl. at 4. Defendant Wilson, who had worked with Field as an investigator during the prosecution of Mr. Auguste in 1998, was assigned by the District Attorney's Bureau of Investigation to assist Field in an investigatory role in preparation for the evidentiary hearing on Mr. Auguste's habeas petition. Stipulations at 2; Pl.'s Opp. to Wilson's MSJ, Ex. 17 ("Wilson Decl.") at 2. During the course of that habeas proceeding, defendant Wilson drafted affidavits for and obtained a number of search warrants. Def. Wilson's Resp. to Pl.'s Mot. for Summ. J. ("Wilson's Resp.") [Docket No. 194] at 1. At that time, it was defendant Field's practice to review an electronic copy of an affidavit prepared to obtain a search warrant, read it, and add his comments, clarifications or changes before returning the draft

---

U.S. 310, 315 (1960); *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002); Fed. R. Civ. P. 16(e).

affidavit to the law enforcement officer from whom he received it.  Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") [Docket No. 182], Ex. 3 ("Field Dep.") at 3.

On July 17, 2003, defendant Wilson executed a search warrant on the residence of Mr. Auguste's mother, Karen Lynn Auguste, located in El Cerrito, California. Wilson's Resp. at 1; Def. Benjamin Field's Resp. Br. in Opp. to Pl.'s Mot for Summ. J. ("Field's Resp.") [Docket No. 197] at 2.  Pursuant to that search, Wilson seized a number of letters and envelopes.  Wilson's Resp. at 2; Sullivan's Resp. at 2; Field's Resp. at 2.  Among them was a letter from Mr. Auguste to plaintiff and an envelope postmarked September 30, 1998.  Def. Sullivan's Mot. for Summ. J. and Br. in Supp. ("Sullivan's MSJ") [Docket No. 183] at 4; Pl.'s Resp. to Sullivan's MSJ [Docket No. 195] at 2; Pl.'s MSJ at 2; Wilson's Resp. at 1; Field's Resp. at 2.  In that letter, among other things, Mr. Auguste discussed a desire to obtain a new trial wherein "victory is assured"; stated that the only way "to assure a victory is to cheat"; mentioned a plan to talk to a female acquaintance about her suggesting to a juror from Mr. Auguste's criminal trial that jury misconduct had occurred; and mentioned bribery of new jurors and placing a surveillance device in the courtroom.  Pl.'s MSJ, Ex. 6.

On July 18, 2003, Judge Emerson held an in-chambers status conference with counsel in the habeas proceeding.  Stipulations at 2.  Defendant Field was present at that status conference, but Wilson was not.  *Id.*  During that conference, Judge Emerson made oral statements about the procedure that defendant Field was to follow to obtain any search warrants related to the habeas proceeding after that date.  *Id.*

On July 21, 2003, defendant Wilson contacted defendant Sullivan, an investigator with the Larimer County Colorado Sheriff's Office, requesting assistance in

obtaining a warrant to search plaintiff's Lyons, Colorado residence. Stipulations at 3. Prior to this contact, defendant Sullivan had no knowledge of plaintiff, Wilson, Field, or any circumstances of the habeas proceeding. *Id.* Defendant Wilson prepared a draft affidavit and emailed it on July 22, 2003 to defendant Sullivan for use in obtaining a search warrant. *Id.* Sullivan informed Wilson that modifications were required to conform the draft affidavit to the format customarily used in Larimer County, Colorado, and proceeded to prepare a search warrant according to that standard format. *Id.* Sullivan relied on the information provided in Wilson's draft affidavit in order to prepare a search warrant affidavit. Sullivan's MSJ at 6. Neither Wilson's affidavit nor Sullivan's affidavit included any reference to when Mr. Auguste's letter to plaintiff was written. Sullivan's MSJ at 6; Wilson's Resp. at 5.

On July 22, 2003, defendant Sullivan presented the search warrant affidavit he had prepared to Larimer County District Court Judge James Hiatt, who signed the warrant. Stipulations at 3. Defendant Wilson traveled to Larimer County, Colorado on July 23, 2003. *Id.* He reviewed Sullivan's affidavit and the warrant signed by Judge Hiatt before commencing a search of plaintiff's residence. *Id.* On July 24, 2003, defendants Sullivan and Wilson, along with other individuals from the Larimer County Sheriff's Department, executed the search warrant on plaintiff's residence in Lyons, Colorado. *Id.* Plaintiff was not at her residence at the time defendants executed the warrant. *Id.* During the search, defendant Wilson contacted defendant Field in California by telephone. *Id.* at 4. The search resulted in the seizure of several items from plaintiff's residence. *Id.*

4

## B.  Procedural History

On August 30, 2005, Judge Wiley Y. Daniel, the judge previously assigned to this case, issued an Order on two motions for summary judgment [Docket No. 76]. That Order dismissed claims against a number of former defendants to this action. Judge Daniel found that genuine issues of material fact precluded summary judgment in Field's and Wilson's favor on the issue of qualified immunity and further denied Field's claim for absolute immunity.  Defendant Field took an interlocutory appeal of Judge Daniel's order.  The Tenth Circuit  affirmed Judge Daniel's ruling on absolute immunity in its Order and Judgment dated May 21, 2007 [Docket No. 100].  The only claim remaining in this litigation is plaintiff's claim under 42 U.S.C. § 1983 seeking damages against defendants Field, Sullivan, and Wilson for allegedly violating her right under the Fourth Amendment of the United States Constitution to be free from unreasonable search and seizure.

Defendant Wilson filed his motion for summary judgment on July 31, 2008, claiming that he is entitled to absolute and qualified immunity from plaintiff's Section 1983 claims.  Defendant Sullivan, in his motion for summary judgment filed on August 1, 2008, likewise asserts qualified immunity and also argues that, notwithstanding immunity issues, plaintiff's Section 1983 claims against him must be dismissed as a matter of law.  Plaintiff filed her motion for summary judgment on August 1, 2008, seeking a determination that the search warrant executed on her residence on July 24, 2008 was not supported by probable cause.  Each of these motions has been fully briefed and is ripe for review.  Because the issues raised in these motions overlap, I consider them jointly.  I first consider the absolute immunity defense raised by

5

defendant Wilson.  My analysis then proceeds to Wilson's and Sullivan's qualified immunity defenses.  Because the qualified immunity analysis requires consideration of the existence of probable cause, I address the propriety of summary judgment on that issue contemporaneously.

## II.  ANALYSIS

### A.   Legal Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### B.  Absolute Immunity

In his motion for summary judgment and reply in support, defendant Wilson

argues that even though this Court and the Tenth Circuit have rejected defendant Field's entitlement to absolute immunity, see Docket Nos. 76, 100, 198, 260, that Wilson should nonetheless benefit from that doctrine. Defendant Wilson argues that he is absolutely immune because: (1) if defendant Field is entitled to absolute prosecutorial immunity, Wilson should be as well; (2) absolute immunity extends to prosecutors and investigators carrying out search warrants; (3) Wilson acted at Field's direction; and (4) Wilson was not present at the in-chambers status conference held by Judge Emerson on July 18, 2003 and was unaware of any remarks made at that conference by Judge Emerson.

In *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), the Supreme Court held "that *in initiating a prosecution and in presenting the State's case*, the prosecutor is immune from a civil suit for damages under § 1983." (Emphasis added). "[T]he more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991). In *Burns v. Reed*, 500 U.S. 478, 486-87 (1991), the Court noted that there is a presumption that qualified rather than absolute immunity is sufficient to protect government officials in carrying out their duties. The *Burns* Court explained: "We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." *Id.* (citations and internal quotation marks omitted). Given this presumption, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486.

7

It is clear that the facts of this case are a significant step removed from the framework laid out in *Imbler* and its progeny. The facts here involve the execution of a search warrant to aid the defense of a habeas corpus proceeding. "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964); *see also Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 269 (1978) ("It is well settled that habeas corpus is a civil proceeding."); *In re Barnett*, 73 P.3d 1106, 1112 (Cal. 2003) ("Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature.") (citations omitted). Neither the initiation of a criminal prosecution nor the presentation of the government's criminal charges is at issue in the present case.

Turning to defendant Wilson's arguments, I conclude that he fails to meet his burden of showing that the use of search warrants in the defense of Mr. Auguste's habeas proceeding – a suspect exercise of the search warrant power – justifies the protection of absolute immunity. First, the Court has already determined that defendant Field is not entitled to absolute immunity; therefore, Wilson cannot piggyback on Field's absolute prosecutorial immunity. Second, Wilson relies on authorities involving pending prosecutions, rather than any case where an investigator was held absolutely immune in connection with a habeas corpus proceeding. *See*, *e.g.*, *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir. 1977) (extending absolute immunity to investigators where their activities were "inextricably tied to the quasi-judicial process of initiating, preparing, and

presenting a case"); *Waits v. McGowan*, 516 F.2d 203, 207 (3d Cir. 1975) (applying absolute immunity to investigators employed by the district attorney "to do a particular investigative job *related to the prosecution of an accused*") (emphasis added). Unlike this case, the authorities cited by Wilson that involve the process of obtaining a search warrant easily fit within the ambit of *Imbler* because they involve a prosecution rather than post-conviction proceedings. *See*, *e.g.*, *Burns*, 500 U.S. at 487, 492 (specifically noting that prosecutor's participation in probable cause hearing – and not in his conduct outside the courtroom relating to the warrant – was connected to the initiation and conduct of a prosecution and, therefore, subject to absolute immunity); *KRL v. Moore*, 384 F.3d 1105, 1112 (9th Cir. 2004) (holding that absolute immunity was appropriate "to the extent the second search warrant sought evidence to prosecute the crimes charged in the indictment," but not as to investigation of new crimes). Absent authority to do so, the Court declines to extend these cases to an investigator assisting the defense of a habeas proceeding, where the state court judgment is presumptively valid and no ongoing prosecution is underway.

In short, defendant Wilson has identified no authority directly supporting his contention that he should enjoy absolute immunity while seeking and executing search warrants as a discovery tool in a civil post-conviction proceeding. The Court finds that the substantial difference presented by a habeas corpus proceeding, where the convicted petitioner bears the burden of proof and the action is civil in nature, prevents the expansion of absolute immunity that defendant Wilson requests. *See Parkhurst v. Shillinger*, 128 F.3d 1366, 1371 (10th Cir. 1997). Importantly, Wilson has not pointed to

any chargeable crimes for which he or defendant Field acted to acquire evidence through execution of the search warrant at issue. Cases applying only qualified immunity in the context of investigatory execution of search warrants unaffiliated with a pending prosecution provide a closer analogy to the conduct engaged in by Wilson in this case. *See*, *e.g.*, *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986) (rejecting absolute immunity for police officer who sought arrest warrant because, among other things, while the warrant process is a vital part of the administration of criminal justice, it is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment, which is the first step in the process of seeking a conviction); *Mink v. Suthers*, 482 F.3d 1244, 1262-63 (10th Cir. 2007) (declining to apply absolute immunity to a prosecutor's review of a search warrant affidavit, in part, because such review "cannot be said to be a uniquely prosecutorial role"). Moreover, one of the important rationales underlying the holding in *Imbler* – that a prosecutor might be subject to a barrage of malicious prosecution litigation for commencing criminal prosecutions absent protection from suit – is wholly absent from the habeas corpus context. *See Burns*, 500 U.S. at 485. As in *Malley*, I conclude that qualified immunity is sufficient to protect defendant Wilson's official functions in this case. Because this conclusion does not depend on whether or not defendant Wilson was privy to the July 18, 2003 in-chambers status conference before Judge Emerson, Wilson's final argument distinguishing Field's situation on factual grounds is also rejected.

## C.  Qualified Immunity

The Supreme Court outlined the analysis to determine whether a government official is entitled to qualified immunity from civil damages in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In *Harlow*, the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818.  The issue of qualified immunity is ordinarily a matter of law to be decided by the judge.  *See id.*; *Maestas v. Lujan*, 351 F.3d 1001, 1007-08 (10th Cir. 2003) (noting that while qualified immunity is normally a question of law, in exceptional circumstances, a jury may be called on to determine disputed historical facts intertwined with the inquiry of whether a reasonable person in the defendant's position would have known their conduct violated the law).

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to "show with particularity facts and law establishing the inference that defendant violated a constitutional right" and that the right allegedly violated was "clearly established at the time of the conduct at issue."  *Hollingsworth v. Hill*, 110 F.3d 733, 737-38 (10th Cir. 1997); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) ("plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred").  In *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009), the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  In this case, I will proceed first by analyzing whether plaintiff has alleged violations of clearly established law before considering whether plaintiff has sufficiently alleged a constitutional violation against the moving defendants.

If plaintiff satisfies her burden to demonstrate a violation of clearly established law, then the burden shifts back to the government official to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).  The Court in *Harlow* clarified this latter inquiry:

> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.  Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained.

457 U.S. at 818-19.

### 1. Clearly Established Law

Plaintiff alleges three violations of the Fourth Amendment.  Specifically, plaintiff asserts that defendants violated her right to be free from unreasonable searches and seizures by: (1) obtaining a search warrant on the basis of stale information; (2) including material misrepresentations and omitting material facts from the search warrant affidavit; and (3) utilizing a search warrant when there was no crime which could be prosecuted.  *See* Pl.'s Resp. to Sullivan's MSJ at 13-15, 22-24; Pl.'s Resp. to Wilson's MSJ at 15-16; Pl.'s MSJ at 8-10.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

authority from other courts must have found the law to be as the plaintiff maintains."
*Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "The
plaintiff is not required to show, however, that the very act in question previously was
held unlawful in order to establish an absence of qualified immunity." *Cruz v. City of
Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001); *see also Snell v. Tunnell*, 920 F.2d 673,
699 (10th Cir. 1990) ("in this circuit, precise factual correlation between the then-
existing law and the case at-hand is not required"). Applying this standard, I find that
plaintiff alleges two violations of clearly established law – that a search warrant cannot
be based on stale information and that an affidavit containing material false statements
or omissions cannot support a finding of probable cause.

With respect to the third argument cited above (using search warrants where no
chargeable crime is being investigated), plaintiff asserts that Colorado law requires that
there be a crime that is capable of being prosecuted concurrently with or subsequent to
the execution of the search warrant. *See*, *e.g.*, Pl.'s MSJ at 8. In particular, plaintiff
argues that Colo. Rev. Stat. § 16-3-301(e), which permits search warrants to seize
property that would be material evidence in a subsequent criminal prosecution,
proscribes the use of search warrants in Colorado to recover evidence of crimes for
which the statute of limitations has run. *Id.* Plaintiff further argues that any prosecution
of crimes potentially evidenced by Mr. Auguste's letter to plaintiff – for example,
obstruction of justice, juror tampering, and suborning perjury – would have been time
barred as of July 2003. *Id.* Plaintiff has also suggested throughout the course of this
litigation her belief that the use of search warrants in a habeas proceeding, where the

underlying conviction is presumptively valid and the proceeding is in the nature of a civil action, is equally improper. The Court shares plaintiff's concerns regarding the use of the government's search warrant power to aid the defense of a petition for writ of habeas corpus. *Cf. Parkhurst*, 128 F.3d at 1371 ("A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment." (quoting *Murray v. Giarratano*, 492 U.S. 1, 13 (1989) (O'Conner, J. concurring))). Nonetheless, plaintiff has cited no Supreme Court, Tenth Circuit, or other authority (including § 16-3-301(e)) that clearly established in July 2003 that the Fourth Amendment of the Constitution of the United States prevented the use of search warrants to obtain evidence of time-barred crimes or for use in post-conviction proceedings. Defendants are therefore entitled to qualified immunity from such claims and shall not be made to stand trial as to that issue. *See Harlow*, 457 U.S. at 818; *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity, if established, is an "entitlement not to stand trial or face the other burdens of litigation").

On the other hand, it was clearly established long before the events giving rise to this lawsuit that a warrant cannot be based on stale information. *See United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) ("It is also fundamental that the element of time is crucial to the concept of probable cause.")*; United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974) ("The Fourth Amendment contemplates that probable cause for the issuance of a search warrant must exist at the time the search is sought to be made. Probable cause existing at some time in the past will not suffice unless circumstances exist from which it may be inferred that the grounds continued to the

time the affidavit was filed.").  So, too, was the prohibition against including material false statements or omissions in a search warrant affidavit.  *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (holding that if it is established that a false statement made knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a search warrant affidavit, the warrant must be voided if the false statement was necessary to the finding of probable cause); *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990) ("we hold that at the time defendant submitted his affidavit and arrested plaintiff [in 1986], it was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause").

Therefore, I turn to the question of whether plaintiff has shown "with particularity facts and law establishing the inference" that defendants violated the foregoing clearly established Fourth Amendment rights.  *Hollingsworth*, 110 F.3d at 737-38.

### 2. Constitutional Violation

The Fourth Amendment of the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

U.S. Const. amend. IV.  Whether a warrant is supported by probable cause is a question of law.  *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).  "[P]robable cause to issue a search warrant only exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of

the described premises would uncover contraband or evidence of a crime." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). The Court reviews "the sufficiency of the affidavit upon which a warrant [was] issued by looking at the totality of the circumstances and simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

Determining the existence of probable cause at a particular point in time is not an exact science. Rather, "a valid warrant may issue when the circumstances before a proper officer are such that a person of reasonable prudence would believe that a crime was being committed on the premises to be searched or evidence of a crime was being concealed there." *United States v. Rahn*, 511 F.2d 290, 292 (10th Cir. 1975). Stated differently, "[p]robable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990).

### i. Stale Information

Probable cause "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). Thus, "[p]robable cause existing at some time in the past will not suffice unless circumstances exist from which it may be inferred that the grounds continued to the time the affidavit was filed." *Neal*, 500 F.2d at 309. However, in the Tenth Circuit probable cause is not lacking solely because a certain period of time has elapsed between the facts included in a search warrant affidavit and

the issuance of the search warrant. *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986). Instead, the relevant inquiry considers "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* If the property sought by search warrant is likely to remain in one place for a long time or the search warrant includes evidence of ongoing, continuous criminal activity, probable cause may be found despite a substantial delay between the facts relied on and the issuance of the warrant. *Id.* "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time." *Johnson*, 461 F.2d at 287.

The search warrant affidavit signed by defendant Sullivan provides (in relevant part):

> AFFIANT, JAMES T. SULLIVAN, being duly sworn, deposes and says: THAT he has probable cause to believe that in or upon [plaintiff's residence] . . . there is located certain property, namely: . . .
>
> 2. Documents, letters, notes, writings, correspondence, authored, written, signed or bearing the name DAMON AUGUSTE addressed to or from DAMON AUGUSTE or any correspondence related to DAMON AUGUSTE.
>
> THAT the facts establishing probable cause, and grounds for issuance of a search warrant, and showing probable cause to believe they exist are as follows: . . .
>
> 2. That on July 21, 2003 your AFFIANT was contacted by TOM WILSON, an Investigator for and with the District Attorneys [sic] Office of Santa Clara, California.
>
> 3. That your AFFIANT was advised by TOM WILSON that he had probable cause to search a residence located at [plaintiff's residence] and that WILSON was requesting the assistance of the Larimer County Sheriff's Office in obtaining and executing that search warrant.
>
> 4. That your AFFIANT was advised by WILSON that he was involved in

17

the investigation of a sexual assault that had occurred in his venue of California involving a suspect, DAMON AUGUSTE.

5. That WILSON advised your AFFIANT that on July 17, 2003 he had executed a search warrant at the residence of KAREN LYNN AUGUSTE in California and that during the execution of the search dozens of letters were seized that contained information related to this sexual assault and that these letters were written by the suspect DAMON AUGUSTE.

6. That WILSON advised your AFFIANT that one of these letters was addressed to DONNA AUGUSTE the suspect's aunt and that this letter contained information related to crimes being perpetrated by DAMON AUGUSTE including the solicitation of jurors for his upcoming trial in California.

7. That WILSON advised your AFFIANT that in this letter DAMON AUGUSTE refers to discussing this solicitation of jurors with DONNA AUGUSTE in future or other letters. . . .

THEREFORE, based upon the preceding information, there is probable cause to believe that located on or within the PREMISES described above there does exist the above described property, and that such property would be of material evidence in a subsequent criminal prosecution in this state or in another state.

Sullivan's MSJ, Ex. A-8 (the "Search Warrant Affidavit") at 1-2.

In cases in which a criminal defendant challenges a probable cause finding, courts review the four corners of the search warrant affidavit to determine whether the issuing magistrate judge made a proper determination of probable cause. *See*, *e.g.*, *Snow*, 919 F.2d at 1460 (concluding evidence obtained by a search warrant should not be suppressed due to the inclusion of facts in the affidavit dating from the beginning of the criminal investigation).

In this § 1983 case, however, the question is whether the defendants infringed plaintiff's Fourth Amendment rights by seeking and executing a search warrant based on information that could not give rise to probable cause because of its staleness.

There are two types of potentially stale information relevant to this inquiry: first, the letter from Mr. Auguste to plaintiff and, second, Mr. Auguste's 1998 conviction.

With respect to the letter from Mr. Auguste to plaintiff cited in the search warrant affidavit, defendants Field, Sullivan, and Wilson have taken varying positions on its actual age. Plaintiff consistently refers to the letter as "postmarked September 30, 1998." *See, e.g.*, Pl.'s MSJ at 2. Defendant Wilson states that he "believes this to be true." Wilson's Resp. at 1. Defendant Field maintains that the "letter that was seized was undated. An envelope[] seized with the letter was post-marked September 30, 1998, and is now believed to have been the date the letter was mailed." Field's Resp. at 2. Defendant Sullivan posits that the letter was found near many other letters and near the envelope postmarked September 30, 1998, but "the letter was not located in the envelope and its date of origin is unknown." Sullivan's Resp. at 2.

Despite defendant Sullivan's protest regarding the actual date of the letter, I do not find a material fact that creates a genuine issue for trial on the subject. The letter itself is addressed only to "Fi." Pl.'s MSJ, Ex. 6. Nowhere does the letter reference plaintiff's full name, her mailing address, or her home address. *See id.* Rather, to connect that letter with plaintiff's residence in Lyons, Colorado, it appears that the envelope bearing the date of September 30, 1998 was a crucial piece of information. *See id.*; *see also* Wilson's MSJ, Ex. A-3(1) (deposition testimony by defendant Wilson) ("Information was seized, information being a letter was seized at the El Cerrito residence which gave me probable cause to believe that further evidence would be located at Donna Auguste's residence in Colorado."). Additionally, defendant Wilson – who physically seized the letter and envelope – testified that the envelope postmarked

September 1998 was the closest envelope to the letter in question, that he reported to defendant Field that he found that letter close to an envelope dated September 1998, and that he told Field that "one can assume that it belongs to that envelope." Field's Resp., Ex. A-1 at 3 (deposition testimony by defendant Wilson). Defendants Field and Wilson also admitted in their answer to plaintiff's Amended Complaint that, although the letter is undated, it was "postmarked" (presumably meaning that it was mailed via the envelope addressed to plaintiff) September 30, 1998. Pl.'s Br. in Opp. to Wilson's MSJ, Ex. 7 at 5. Neither conjecture nor the existence of a scintilla of evidence in support of the nonmovant's position is sufficient to show a genuine issue of material fact; rather, a genuine issue exists only where a reasonable jury could find in favor of the nonmovant on the issue. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006). The court does not accept defendant Sullivan's conjecture as to the date of the letter as creating a genuine issue of material fact. In light of the other defendants' admissions and the other evidence cited above, a reasonable jury could find only that the letter was authored on or before September 30, 1998.

As to the second category of information pertinent to the staleness inquiry, the facts are not in dispute. On August 7, 1998, in Santa Clara County, California, Mr. Auguste was convicted by a jury of three sexual assault crimes. Unsuccessful on direct appeal, Mr. Auguste filed a petition for writ of habeas corpus in the District Court for Santa Clara County to challenge his conviction. Plaintiff's residence was searched and her property seized during the pendency of that habeas proceeding.

A further question that must be resolved is which defendants had knowledge of these two pieces of information prior to the issuance and execution of the search

warrant. Unquestionably, all three defendants were aware, or reasonably should have been aware, of the timing relating to Mr. Auguste's conviction and his subsequent commencement of a habeas case. Defendants Field and Wilson were investigating evidence in the habeas case and defendant Sullivan was privy to this information because he received defendant Wilson's draft affidavit setting forth the same in advance of preparing his own affidavit. As to the age of the letter, it is undisputed that defendant Sullivan was unaware that it dated to 1998. Pl.'s Resp. to Sullivan's MSJ at 4. Defendant Wilson, who seized the letter along with the envelope addressed to plaintiff, was of course in possession of the relevant timing information as of the July 17, 2003 El Cerrito search. There is, however, a factual dispute as to whether defendant Field became aware of the age of the letter before the search warrant issued or plaintiff's residence was searched. *See* Field's Resp. at 2.

In light of the age of the letter from Mr. Auguste to plaintiff, I conclude that the search warrant affidavit was impermissibly based on stale information. Nearly five years elapsed between the time when the letter was written and when defendants Sullivan and Wilson executed the search warrant on plaintiff's residence. Defendants have not cited any cases in this Circuit where such a delay was held acceptable to support probable cause, nor has the Court located one. In *Neal*, however, the Tenth Circuit held that a three month delay between the information concerning the last criminal activity – a statement by a participant in a stolen vehicle trafficking operation as to the whereabouts of evidence of such crime – was too remote to support probable cause, in part because the property sought, including titles to automobiles, was removable from the premises. 500 F.2d at 308-09. The letter from Mr. Auguste to

21

plaintiff potentially infers that additional correspondence is forthcoming, stating "That'z all 4 today" and instructing plaintiff not to share "at this stage." Pl.'s MSJ, Ex. 6 at 6. However, Mr. Auguste was unsuccessful on direct appeal of his criminal conviction and commenced a habeas corpus proceeding on June 14, 2001. Field. Decl. at 4. Thus, the likelihood of Mr. Auguste having an ongoing plan to solicit future jurors effectively ended at least two years prior to the execution of the search warrant. Moreover, any letters from Mr. Auguste at plaintiff's residence were removable (which was more likely if they contained evidence of planned crimes), making the significance of the time gap between the probable date of the letter and the search even greater. Defendants' suggestions of an ongoing course of criminal conduct are therefore unconvincing. The 1998 letter was too stale to support a finding of probable cause.

In sum, plaintiff has established that the search warrant was not supported by probable cause because the search warrant affidavit was based upon stale information. Questions of fact remain, however, as to the timing of defendant Field's knowledge of the date of the 1998 letter and with respect to Field's and Wilson's degree of familiarity with Sullivan's affidavit prior to the search of plaintiff's residence.

### ii. Material False Statements and Omissions

Plaintiff further argues that there was no probable cause to support the search warrant because Sullivan's and Wilson's affidavits were plagued by material false statements and omissions. Specifically, plaintiff points to the omission of the date of the letter from Mr. Auguste to plaintiff and Mr. Auguste's conviction for sexual assault crimes in 1998. Pl.'s MSJ at 10-12; Pl.'s Resp. to Sullivan's MSJ at 16-18. Plaintiff also identifies the following alleged material false statements in Sullivan's affidavit: (1) Mr.

Auguste is described as a "suspect" in a sexual assault investigation rather than a person already convicted of sexual assault; (2) the affidavit states that dozens of letters seized from the El Cerrito residence related to the sexual assault when only one letter, the one between Mr. Auguste and plaintiff, related to that topic; (3) the affidavit ascribes the crime of solicitation of jurors to Mr. Auguste without evidence thereof; and (4) the affidavit states Mr. Auguste has an upcoming trial.

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit. Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause." *United States v. Colonna*, 360 F.3d 1169, 1174 (10th Cir. 2004) (quoting *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001)). Misstatements resulting from negligence or inadvertence, as opposed to intentional or reckless conduct, however, do not invalidate the warrant. *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). "A reckless disregard for the truth exists when the affiant in fact entertained serious doubts as to the truth of his allegations, and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (alterations and internal quotation marks omitted).

*Franks* applies with equal force to material omissions in a search warrant affidavit. *See Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990). Thus, it is a violation of the Fourth Amendment "knowingly and intentionally, or with reckless

disregard for the truth," omit material information from a search warrant affidavit. *United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001). "However, in order to invalidate a warrant based on a reckless omission, the information excluded from the affidavit must be material to the magistrate judge's finding of probable cause." *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997). "Recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *DeLoach*, 922 F.2d at 622.

In assessing whether or not false statements or omissions are material, the Court must strike out the false statements and include omissions, and then consider the impact of these alterations on the existence of probable cause. *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("Where false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." (citing *Franks*, 438 U.S. at 155-56)); *Stewart v. Donges*, 915 F.2d 572, 583 n.13 (10th Cir. 1990) ("Whether the omitted statement was material is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause."); *DeLoach*, 922 F.2d at 623 (court must ask whether the omitted material, if included, would negate probable cause).

Under *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997), government officials other than the affiant are accountable under the Fourth Amendment to the same extent as the affiant for their statements that were "deliberately or recklessly false or misleading insofar as such statements were relied

upon by the affiant in making the affidavit."  In this case, defendant Sullivan relied on

defendant Wilson's affidavit in drafting the search warrant affidavit ultimately signed by

Judge Hiatt.  Therefore, I now address whether these two affidavits included material

false statements which, if excluded, invalidate the search warrant, or if they omitted

information which, if included, would have vitiated probable cause.  *See Basham*, 268

F.3d at 1204; *Stewart*, 915 F.2d at 582-83.

I first consider the omission from the affidavits of any information concerning the

date of the letter from Mr. Auguste to plaintiff.  This information was not included in

either affidavit at issue.  Yet defendant Wilson recovered the envelope postmarked

September 30, 1998 near the letter from Mr. Auguste to plaintiff and relayed that

information to defendant Field, informing him that one could at least assume that the

letter and envelope went together.  Further, as previously discussed, the letter itself

includes only a nickname, "Fi," and includes no reference to plaintiff's address in

Colorado.  On the record before me, the only reasonable inference is that defendants

Field and Wilson used the postmarked envelope addressed to plaintiff to connect

plaintiff to the letter.  Thus, Wilson's and Sullivan's affidavits should have included

some mention of the date on the postmarked envelope in connection with the letter

from Mr. Auguste to plaintiff.  Adding the omission of this September 30, 1998 date to

the affidavits vitiates probable cause.  In other words, omission of the date of the letter

was material under *Franks* and *Stewart*.

The next issue is whether knowledge of the misleading nature of omitting the

date of the letter is attributable to defendants on motion for summary judgment.  Under

*Franks* and its progeny, negligent or inadvertent omissions are insufficient to invalidate

a search warrant; the affiant must omit material information knowingly, intentionally, or in reckless disregard for the truth. *Bruner v. Baker*, 506 F.3d 1021, 1027 (10th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). The Court finds sufficient evidence to infer that defendant Wilson recklessly disregarded the truth by omitting the postmark date from his draft affidavit. On the other hand, defendant Sullivan claims that Wilson did not apprise him, orally or in writing, of the date of the postmarked envelope and that he assumed from his conversations with Wilson that the letter had been written recently, that is, near in time to July 2003. Plaintiff does not contest this. Accordingly, the Court is unable to conclude that Sullivan knowingly or intentionally, or with reckless disregard for the truth, omitted the postmark date. With respect to defendant Field, the Court finds that there are fact issues as to his knowledge of the date of the letter prior to the issuance of the search warrant and regarding the extent of his review and editing of Wilson's affidavit which preclude a finding at this time that Field violated the Fourth Amendment by omitting material information from the search warrant.

I next consider defendant Sullivan's omission of the fact of Mr. Auguste's 1998 criminal conviction and status as a habeas corpus petitioner, as well as the false statements alleged by plaintiff. To aid this inquiry, it is helpful to set out the relevant provisions of defendant Wilson's affidavit. Wilson's affidavit included the following:

> On August 17, 1998, a jury convicted Petitioner of multiple violations of California Penal Code Sections 288a (Oral Copulation in Concert), 264.1 (Rape in Concert) and 286(d) (Sodomy in Concert). After unsuccessfully appealing his convictions, Petitioner filed a Writ of Habeas Corpus with the Superior Court of Santa Clara County, which issued an Order to Show Cause (OSC) why relief should not be granted.

> During the trial for Auguste and Hendricks, Auguste solicited a female to commit perjury and attack the victim's statement and credibility. This

solicitation was documented in a letter from Auguste to the female. The letter was seized and is being retained in the District Attorney's Bureau of Investigations evidence room. The address to be searched is where Auguste's Aunt, Donna M. Auguste, resides. . . .

Investigator Wilson advised me that he executed a search warrant at the residence of Damon Auguste's mother, Karen Lynn Auguste, on 7-17-03. Pursuant to this search warrant, dozens of letters were seized that were handwritten by Damon Auguste. One of these letters was written to his Aunt Donna Auguste. In that letter, Damon writes to her that he plans on recruiting two females to solicit jurors in his upcoming trial and pay them $1000 to help him. The wording in the letter indicates that more details about the solicitation will be discussed with her in a future letter. I believe that there are numerous letters and/or other documents at Donna Auguste's residence, authored by Damon Auguste's [sic], which discuss his plans to solicit jurors.

I believe that the above-mentioned records are subject to lawful seizure pursuant to Penal Code Section 1524 as they constitute evidence which tends to show a felony has been committed, or tends to show that a particular person has committed a felony, to wit: a violation of California Penal Code sections 288a (Oral Copulation in Concert), 264.1 (Rape in Concert), and 286(d), (Sodomy in Concert).

Pl.'s MSJ, Ex. 7 at 9-10.

Defendant Sullivan omitted any mention in his affidavit of information contained in the first paragraph quoted above, which discussed the procedural posture of Mr. Auguste's criminal and habeas proceedings. Thus, Sullivan's affidavit refers to "a sexual assault that had occurred" in Wilson's "venue of California involving a suspect, DAMON AUGUSTE." Search Warrant Affidavit at 1. In the paragraph mentioning the July 17, 2003 El Cerrito search – the only date mentioned in the search warrant affidavit – Sullivan's affidavit states that dozens of letters written by Mr. Auguste "were seized that contained information related to this sexual assault." Id. Then Sullivan's affidavit states that the letter from Mr. Auguste to plaintiff "contained information related to crimes being perpetrated by DAMON AUGUSTE including the solicitation of jurors for

his upcoming trial in California."

Taking these statements together, and in the context of Sullivan's affidavit as a whole, a reasonable magistrate reviewing the affidavit would reach the conclusion that Mr. Auguste was to be tried in the near future for sexual assault crimes and was attempting, or at least discussing, solicitation of jurors in advance of that trial. In fact, the only crime that the Sullivan affidavit suggests Mr. Auguste is committing is the solicitation of jurors. Because there are no jurors in a habeas corpus proceeding, there was no possibility of discovering evidence of criminal activity for a crime that Mr. Auguste could not commit.

Reviewing other information contained in both affidavits, I conclude that Sullivan's use of the phrase "crimes being perpetrated by DAMON AUGUSTE including the solicitation of jurors for his upcoming trial in California" constitutes a material false statement. It is undisputed that in July 2003, Mr. Auguste was in the midst of a habeas corpus proceeding. There was no upcoming trial, let alone a jury trial. The undeniable implication of Sullivan's affidavit is that, as of July 2003, Mr. Auguste was actively engaged in juror solicitation for a pending jury trial. This was not true.

Under *Wolford*, 78 F.3d at 489, the Court omits material misstatements and adds material omissions and then determines whether the affidavit sets forth probable cause. Thus, the Sullivan affidavit should be read to include information that Mr. Auguste was convicted by a jury on August 17, 1998 of sexual assault crimes, unsuccessfully appealed, and that he subsequently filed a petition for writ of habeas corpus, which was pending. Conversely, the phrases "being perpetrated by DAMON AUGUSTE" and "for his upcoming trial in California" should be excised. These modifications result in an

affidavit that is vague and that cannot support a finding of probable cause. "It is fundamental that the law of probable cause has been developed in an attempt to prevent the issuance of a search warrant on the basis of vague and uncertain information." *Johnson*, 461 F.2d 287. Even if a reviewing magistrate concluded, as posited by defendants Wilson and Field, that evidence reinforcing Mr. Auguste's guilt was likely to be found at plaintiff's residence, such conclusion would not save the search warrant because probable cause "existing some at some time in the past will not suffice unless circumstances exist from which it may be inferred that the grounds continued to the time the affidavit was filed." *Neal*, 500 F.2d at 309. Mr. Auguste's conviction was presumptively valid and the affidavit, as modified under *Franks* and *Stewart*, contained no temporal component linking plaintiff's residence to ongoing criminal activity.

Under *Franks* and its progeny, mere negligent or inadvertent false statements or omissions will not suffice to show a Fourth Amendment violation. Plaintiff has, however, established a Fourth Amendment violation as to defendant Sullivan under the standards set forth in *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990). Sullivan's affidavit, as submitted to Judge Hiatt, strongly implied that Mr. Auguste was to be tried by a jury for sexual assault crimes and was likely engaging in unlawful solicitation of jurors in advance of trial. Defendant Sullivan knew, however, that Mr. Auguste had been convicted of the sexual assault crimes. Sullivan's MSJ at 6. In light of defendant Sullivan's knowledge of that conviction, there were obvious reasons to doubt the veracity of the allegations included in the search warrant affidavit. *See DeLoach v.*

*Bevers*, 922 F.2d at 622. Additionally, defendant Sullivan omitted information giving the context of Mr. Auguste's conviction and ongoing habeas proceeding that would have vitiated probable cause if included. *See id.* Thus, defendant Sullivan's misstatements and omissions were not inadvertent or negligent. If Sullivan had included information concerning Mr. Auguste's August 17, 1998 conviction, unsuccessful appeal, and subsequent initiation of habeas corpus proceedings in his affidavit, the affidavit would not have supported a finding of probable cause. Thus, such omissions were material under *Franks* and *Stewart*.

### 3. Objective Reasonableness

Because plaintiff has satisfied her burden of showing a violation of clearly established law by defendants Wilson and Sullivan,[2] to sustain their qualified immunity defense, defendants Wilson and Sullivan must rely on exceptional circumstances and

---

[2] As previously noted, there are genuine issues of material fact concerning whether defendant Field violated plaintiff's rights under the Fourth Amendment and whether he is entitled to qualified immunity. For purposes of clarifying those fact questions, the Court briefly outlines relevant law governing defendant Field's potential liability in this case. "For supervisory liability, plaintiffs must demonstrate an affirmative link between the supervisor's conduct and the constitutional deprivation; liability based upon respondeat superior will not do." *Snell v. Tunnell*, 920 F.2d 673, 700 (1990). For a defendant acting in a supervisory capacity, plaintiff must show that the official "expressly or otherwise, authorized, supervised, or participated in conduct which caused the constitutional deprivation." *Id.* Even if a governmental official is not acting in a supervisory role, a plaintiff may still prove liability under Section 1983 by demonstrating that such defendant "caused" the plaintiff to suffer a constitutional deprivation. *Id.* "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988)). In the case of defendant Field, there is a genuine issue as to the existence of an affirmative link between his conduct and the Fourth Amendment violations identified in this Order and, alternatively, whether he knew or should have known that his conduct would cause such violations.

prove that they neither knew nor should have known of the relevant legal standard. *Harlow*, 457 U.S. at 819; *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) ("The next step in the analysis is to consider the "'objective legal reasonableness' of the state actor's actions, assessed in light of the legal rules that were 'clearly established' at the time it was taken." (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987))). "The objective legal reasonableness of the officer's actions is a legal question. But where the historical facts material to that issue are in dispute there is an issue for the jury." *Roska*, 328 F.3d at 1251 (alterations and internal quotation marks omitted).

Defendant Wilson asserts that he may rely on the advice of counsel – that of defendant Field – to shield him from imputed knowledge of the clearly established law that he violated. I find that there are genuine issues of material fact that preclude summary judgment on this issue. Communications that occurred between Wilson and Field prior to the issuance of the search warrant that is the subject of this case are disputed.

Defendant Sullivan contends his actions are protected by qualified immunity even if a constitutional violation occurred because he was entitled to rely on the information he received from defendant Wilson. Even so, defendant Sullivan's reliance on another officer's representations regarding probable cause must be objectively reasonable. *Oliver v. Woods*, 209 F.3d 1179, 1191 (10th Cir. 2000). I find that there are genuine issues of material fact with respect to the objective reasonableness of defendant Sullivan's reliance on information he learned from defendant Wilson. These issues of material fact preclude summary judgment on the issue of exceptional

circumstances.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff Donna M. Auguste's motion for summary judgment

[Docket Nos. 181, 182] is GRANTED.  It is further

**ORDERED** that defendant James Sullivan's motion for summary judgment

[Docket No. 183] is DENIED.  It is further

**ORDERED** that defendant Thomas Wilson's motion for summary judgment

[Docket Nos. 177, 178] is DENIED.

DATED March 26, 2009.

BY THE COURT:


s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge